**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**ADVOCACY CENTER FOR PERSONS**
**WITH DISABILITIES, INC.,**

      **Plaintiff,**

                                        **Case No.:4:03cv181-RH/WCS**

**vs.**

**CHAUTAQUA OFFICES OF**
**PSYCHOTHERAPY AND EVALUATION, INC.**

      **Defendant.**

---

### DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY,
### MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Defendant, CHAUTAQUA OFFICES OF PSYCHOTHERAPY AND EVALUATION, INC., ("COPE"), files its Motion to Dismiss Advocacy Center for Persons With Disabilities, Inc., (the "CENTER") under Rule 12(b)(6) Fed. R. Civ. P. or in the alternative, its Motion for Summary Judgment under Rule 56 Fed. R. Civ. P. with supporting Memorandum of Law, and states:

### FACTS

1.    On July 16, 2002, the CENTER, by correspondence, requested all the records on Ms. Ruby Driver for the year 2002, along with the policies and procedures describing the operation of emergency services at COPE (See correspondence Attached as Exhibit A).

- 4 -



2.      On August 23, 2002, COPE responded with a request that the CENTER provide additional statutory support for its contention that it was entitled to the release of these records (See correspondence Attached as Exhibit B).

3.      On September 3, 2002, the CENTER responded providing a reference to the Congressional amendment made in 2000 to the <u>Protection and Advocacy For Mentally Ill Individuals Act</u>, 42 U.S.C. §§10801, et seq. ("PAMII" or the "Act") that it believed required the disclosure (See correspondence Attached as Exhibit C).

4.      On October 31, 2002, COPE responded acknowledging the amendment to the PAMII Act and again requested statutory support for CENTER'S claim of authority. COPE believed that, while Ms. Driver was living in a community setting, she had not been discharged from a facility within 90 days prior to her death, a pre-requisite to the disclosure as set forth in 42 U.S.C. §10805.  COPE requested further statutory or case law in support of the CENTER'S position (See correspondence Attached as Exhibit D).

5.      On December 17, 2002, the CENTER responded stating, "the 90-day discharge provision no longer has any practical effect, given the amendment in 2000 to the PAMII Act" and again demanded the records (See correspondence Attached as Exhibit E)

6.      On January 31, 2003, COPE responded with a written confirmation of a phone discussion with the CENTER concerning its demand.  COPE further outlined the Federal cases interpreting PAMII and its position regarding the release of privileged mental health information under Title 42 U.S.C. §§10801, et seq.  (See correspondence Attached as Exhibit F).

7.     On June 13, 2003, the CENTER filed its Complaint for Declaratory and

Injunctive Relief in the United States District Court for the Northern District of Florida

and claims the right to access these private medical records under PAMII.

## ARGUMENT AND CITATIONS TO LEGAL AUTHORITY

The CENTER has filed its complaint seeking the release of certain medical

records and other documents relating to care rendered to Ms. Ruby Driver, an out-patient

who saw a COPE psychiatrist the day before her unfortunate death.  For the reasons fully

set forth below, the CENTER has failed to set forth a cognizable claim against COPE and

dismissal with prejudice for failure to state a cause of action or, in the alternative,

dismissal by summary judgment is appropriate and must be granted as a matter of law.

## 1.     Standard of Review

Dismissal under Rule 12(b)(6) Fed. R. Civ. P. is required when "it appears beyond

doubt that the plaintiff can prove no set of facts that would entitle him to relief." Conley

v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).  A trial court,

must review a motion to dismiss in "the light most favorable to the plaintiff." Scheuer v.

Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).  The issue is not

whether the plaintiffs will ultimately prevail, "but whether the allegations are sufficient to

allow them to conduct discovery in an attempt to prove their allegations." Jackam v.

Hospital Corp. of America Mideast Ltd., 800 F.2d 1577, 1579 (11th Cir.1986).  The

Court's analysis of the adequacy of a plaintiff's complaint under a Rule 12(b)(6) motion

is "limited primarily to the face of the complaint and attachments thereto." Bender v.

CenTrust Mort. Corp., 833 F. Supp. 1525, 1528 (S.D. Fla. 1992).

When extrinsic materials are produced in support of the a motion to dismiss for failure to state a cause of action, the Court may consider those materials and convert the motion in to a Rule 56 Fed. R. Civ. P. motion for summary judgment.

**2.  The CENTER has failed to plead a factual basis demonstrating it has standing to bring a claim mandating the disclosure of the requested records and materials.**

To begin, the CENTER claims entitlement to the disclosure of the medical records and certain other documents relating to the treatment of Ms. Ruby Driver based upon the authority set forth under PAMII. However, the Center has failed to comply with the portion of the Act requiring an allegation that Ms. Driver lacks a legal guardian, conservator or other legal representative as required in 42 U.S.C. § 10805(4)(B)(ii) such that it would have standing to pursue this declaratory judgment action. Such an oversight is fatal to its position requiring dismissal of it complaint as a matter of law.

Release of access to privileged mental health information under the PAMII Act is addressed in 42 U.S.C. § 10805(4). Congress designed this portion of the statute to allow access to privileged mental health records through release by the "client of the system… or the legal guardian" of the client. See 42 U.S.C. § 10805(4)(A). As an alternative to a personal release, or when a client is unable due to their death to provide a release for access to their privileged mental health records, a State Advocacy System may obtain these records only by meeting additional criteria as set forth in 42 U.S.C. § 10805. Under this portion of the Act, before the CENTER can secure the disclosure of the medical records requested, three factors must be considered and met by the group seeking release of the records.

First, the CENTER must plead that the patient is unable to provide a release due to a physical condition and is therefore "unable to authorize the system to have such access." 42 U.S.C. § 10805(4)(B)(i). Here, the requirement is met because the CENTER has pled that Ms. Driver is deceased.

Next, before the records are released to the CENTER, it must pled that the patient does not have a "legal guardian, conservator, or other legal representative, or for whom the legal guardian is the state." See 42 U.S.C. § 10805(4)(B)(ii). The CENTER has failed to make such an allegation in its complaint; therefore, the CENTER does not have standing to pursue this action. For this reason alone, the complaint must be dismissed.

3.     **Even if standing is established, before the records can be disclosed, the CENTER must plead either the existence of a complaint of abuse or neglect or establish probable cause to believe that such abuse or neglect has occurred.**

Under the third factor to be considered before disclosure can be ordered, the Center must plead that a complaint exists or that probable cause exists demonstrating abuse or neglect has occurred. In this matter, the CENTER'S Complaint for Declaratory Judgment is devoid of sufficient factual allegations concerning this factor and its complaint is thus is due to be dismissed.

Under PAMII, a showing of probable cause by a State Advocacy System does not require as great a showing as under the Constitution's Fourth Amendment protections for a private citizen's freedom from unreasonable search. See Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 894 F. Supp. 424, 429 (M.D. Ala. 1995).

The relaxed requirement has been consistently demonstrated in the established case law. For example, in Alabama Disabilities Advocacy Program v. J.S. Tarwater

Developmental Center, 97 F.3d 492, 498 (11th Cir. 1996), the Eleventh Circuit Court discussed that the PAMII Act makes no special requirements as to the source of a complaint while finding that an anonymous phone call could constitute probable cause sufficient to allow access to a patient's medical records.    In Maryland Disability Law Center, Inc. v. Mt Washington Pediatric Hospital, Inc. 106 Md. App. 55, 74 664 A.2d 16, 25 (Ct of Spec. App. 1994), an affidavit by the State Advocacy System administrator delivered to the hospital setting out the basis of a complaint of abuse or neglect was found to be sufficient to establish probable cause.  Finally, in Georgia Advocacy Office v. Borison, 238 Ga. App. 780, 781, 520 S.E.2d 701, 703 (Ga. App. 1999), the court held that the State Advocacy System could use "media reports, general investigations, inspection reports and other credible information regarding abuse or neglect" to establish probable cause.

However, there is no case law that suggests that the mere death of a non-custodial patient, by suicide or other means, is sufficient to establish probable cause.  In the case at bar, the CENTER has made the bald assertion that Ms. Driver committed suicide and that her death creates probable cause because she saw a doctor at COPE the evening before she killed herself.  Interestingly, the CENTER did not attach a copy of the death certificate revealing the cause of death.  That notwithstanding, and assuming that the allegation is true, the CENTER has offered nothing other than the death by alleged suicide in support of its allegation that abuse or neglect occurred.  Unlike the cases cited above, where there was at least some evidence in the form of an anonymous telephone call, a report or an investigation supporting probable cause, here, the CENTER asserts that death alone is sufficient.  Clearly such an assertion is without merit and not

supported by existing case law. If that were so, the center would be entitled to the release of the record of every patient who died while under the care of a facility such as COPE. Surely, that was not the intent of Congress and that proposition is not set out in PAMII as codified. With nothing more than the allegation present as probable cause by the Center, the complaint is due to be dismissed.

4. **Even if the CENTER could establish standing and probable cause, the CENTER'S contention that it is entitled to the disclosure of Ms. Driver's mental health records and the policy and procedure manuals of COPE merely because she was a person with an alleged "significant mental illness or emotional impairment" who lived in a community setting is not supported under 42 U.S.C. §§10801, et seq.**

The CENTER finally contends that it is entitled to the disclosure of the medical records of Ms. Ruby Driver as well as certain policy or procedure manuals of COPE based on the mere allegation that Ms. Driver suffered from a "significant mental illness or emotional impairment" coupled with the fact that she lived in a community setting at the time of her death. These assertions are based upon an incorrect and incomplete reading of 42 U.S.C. §§10801, et seq. In this case, there is no statutory or case law supporting the CENTER'S claimed entitlement to the request materials.

As set forth in its legislative history, PAMII was designed to curb state psychiatric hospitals from warehousing and failing to provide adequate medical treatment, food, clothing and hygiene to its patients. Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 894 F. Supp. 424, 427 (M.D. Ala. 1995), aff'd 97 F.3d 492 (11th Cir. 1996). PAMII was initially enacted to provide protection to mentally ill persons in a custodial setting. Since there has been a trend toward integrating the mentally ill into society and giving them as much freedom as possible, programs and services which are only partially or non-custodial in nature have arisen. Congress

addressed these quasi-custodial settings in an October 2000 amendment to PAMII by adding specific elements to the definitions of various terms. See 42 U.S.C. § 10802. The amendments were modeled after the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6000. Under 42 U.S.C. § 10802(4)(A)(ii), Congress now defined an "individual with mental illness" to include a person with a "significant mental illness or emotional impairment" who "lives in a community setting, including their own home." However, Congress also left intact 42 U.S.C. § 10805(a) that provides in pertinent part:

(a) A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall --

(1) have the authority to –

(A) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;

(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State; and

(C) pursue administrative, legal, and other remedies on behalf of an individual who –

(i) was a individual with mental illness; and

(ii) is a resident of the state, **but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment.** (emphasis added)

The Legislature's amendment of 24 U.S.C. § 10802(4)(ii), expanding the definition of an individual with a mental illness, did not eviscerate the remaining provisions of PAMII. The mere fact that an individual living in a community setting meets the definition of an individual with a mental illness does not automatically entitle a

recognized investigating agency to the release of a patient's medical records. Instead, the expanded definition must be considered in conjunction with the remainder of the PAMII Act to determine whether mandatory disclosure is required. Under the Act, the records of an individual living in a "community setting," must be disclosed if it is pled and proven that the alleged abuse or neglect at issue occurred within 90 days after the date of the discharge from a facility providing care or treatment to the patient.

The provisions of the Act, as set forth above, are so clear on their face that there is no case law directly on point addressing whether disclosure will be mandated if the 90 day requirement is not met, either before or after the 2000 amendments. However, the 90 day issue was addressed in dicta in a case that the CENTER should be well familiar with. See Doe v Stincer, 990 F. Supp. 1427, 1431 (S.D. Fla. 1997), *overruled on other grounds by* Doe v Stincer, 175 F.3d 879 (11th Cir. 1999). In Doe, the CENTER brought an action alleging violation of Americans with Disabilities Act (ADA) as result of a Florida statute making right of access to medical records inapplicable to records of treatment for any mental or emotional condition. Id. at 1427. The action in this case was not predicated upon a claimed violation of PAMII; nonetheless, in footnote 2 the Judge Federica A. Moreno made the following observation directly relating to the 90 requirement:

> The Advocacy Center specifically does not bring its claim under 42 U.S.C. § 10805(a)(1)(C), and indeed, could not bring its claim on behalf of Chris Doe, the only named individual Plaintiff. Although Chris Doe was "involuntarily confined in a municipal detention facility for reasons other than serving a sentence resulting from conviction for a criminal offense," Chris Doe was not an individual with a mental illness because she did not and does not have "a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State." *Id.* § 10802(4)(A)(B). Although the ADA includes those whom are "perceived" as having a disability within the

definition of "disabled," *see* 42 U.S.C. § 12102(2)(B)(C); 28 C.F.R. § 35.104, the PAIMI contains no similarly inclusive provision in its definition of "individuals with mental illness." **In any event, although Chris Doe was allegedly denied access to her mental health records because of the statutory exception, the Advocacy Center could not bring a claim on her behalf because she was discharged from Mercy Hospital in early 1994, which was more than 90 days prior to the filing of the original Complaint in mid-1996. See 42 U.S.C. § 10805(a)(1)(C).** (Emphasis added)

As can be seen, the court recognized that discharge from a treating facility more than 90 days before the matter at issue was critical to the Act's application and enforceability. Any other interpretation of PAMII ignoring the 90 day requirement would open the door for the disclosure to the CENTER of the medical records of any mentally ill patient in contravention of the plain meaning of the code. This result could not have been intended by Congress who specifically retained the 90 day threshold when passing the 2000 amendments to PAMII. Thus, if the 90 day requirement is not met, the disclosure of a patient's medical records cannot be ordered.

In the case a bar, there is no allegation that Ms. Driver was an in patient or had been discharged during a period less than 90 days before her death. It is clearly shown by the Affidavit of Dr. Lourdes F. Quiray, M.D., Ms. Driver was not an in-patient to nor was she discharged from the COPE facility within 90 days prior to her untimely death (See Affidavit of Dr. Lourdes F. Quiray, M.D., Chautaqua Offices of Psychotherapy and Evaluation, Inc. attached as Exhibit G). This places Ms. Driver's privileged medical records well outside the guidelines established for disclosure by PAMII as set forth in 42 U.S.C. § 10805(a) entitling COPE to an order of dismissal of the CENTER'S complaint with prejudice.

## CONCLUSION

The CENTER has clearly failed to state a cause of action against the defendant COPE. Given the evidence presented, the CENTER cannot, under any circumstances, establish facts that would entitle it to the disclosure of these privileged mental health records. COPE is thus entitled to dismissal of the CENTER'S complaint as a matter of law. .

**WHEREFORE,** Defendant, CHAUTAQUA OFFICES OF PSYCHOTHERAPY AND EVALUATION, INC., respectfully requests the Court enter an order granting this Motion to Dismiss Plaintiffs Complaint for Declaratory and Injunctive Relief, and reserve jurisdiction for Defendant, CHAUTAQUA OFFICES OF PSYCHOTHERAPY AND EVALUATION, INC., to seek reimbursement costs associated with the defense to this Petition, and any further relief this Court may deem just and proper.

Respectfully Submitted,

W. DAVID JESTER, FL Bar No.: 894354
Galloway, Johnson, Tompkins, Burr & Smith,
1101 Gulf Breeze Parkway, Suite 2
Gulf Breeze, FL 32561
(850) 934-8800
Attorneys for CHAUTAQUA OFFICES OF
PSYCHOTHERAPY AND EVALUATION, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to Gordon B Scott, Esq. Trial Counsel for Advocacy Center for Persons with Disabilities, Inc. 2671 Executive Center Circle, West Suite 100, Tallahassee, Florida 32301, and Hubert Grissom Esq. Trial Counsel for Advocacy Center for Persons with Disabilities,

Inc., 1000 North Ashley Drive, Tampa, Florida 33602, by United States mail properly addressed, postage prepaid this _____ day of August, 2003.

_____

W. DAVID JESTER, ESQUIRE

# Exhibit A



# Advocacy Center for Persons With Disabilities, Inc.

## *Florida's Protection and Advocacy Programs*

July 16, 2002

Rachel Gillis
Executive Director
COPE Center
P O Box 607
DeFuniak Springs, FL 32433

RE: Ruby Driver, Date of Birth: 09/08/47

Dear Ms. Gillis:

We have recently learned of the death of Ruby Driver, a woman who received services from the COPE Center shortly before her apparent suicide. As the designated protection and advocacy agency for Florida, we are requesting copies of all clinical records of Ms. Driver's as well as some COPE Center operating procedures.

The Advocacy Center for Persons with Disabilities, Inc. ("Advocacy Center"), is a private, non-profit corporation designated by the Executive Office of the Governor as the recipient of federal funds to provide protection of and advocacy for the rights of Floridians with disabilities. Our program component at the Advocacy Center, Protection and Advocacy for Individuals with Mental Illness (PAIMI), was established pursuant to the Protection and Advocacy For Mentally Ill Individuals Act, Title 42 U.S.C. § 10801, et Seq. ("PAIMI Act"). The stated purpose of PAIMI is:

To assist States to establish and operate a protection and advocacy system for individuals with mental illness which will -

(A)     protect and advocate the rights of such individuals
through activities to ensure the enforcement of the
Constitution and Federal and State Statutes; and

(B)     investigate incidents of abuse and neglect of
individuals with mental illness if the incidents are
reported to the system or if there is probable cause
to believe that the incidents occurred (42 U.S.C. § 10801(b)).

To effect this goal, the statute allows advocacy groups the right to pursue legal and administrative remedies on behalf of persons with mental illnesses, to obtain access to records under certain conditions, and to obtain access to facilities at which persons with mental illness are housed. See 42 U.S.C. § 10805(1)(A) regarding the Advocacy Center's authority to investigate

☑ 2671 Executive Center Circle West,
Suite 100
Tallahassee, FL 32301-5092
tel. 850.488.9071
fax 850.488.8640
toll free 800.342.0823
toll free TDD only 800.346.4127

☐ 2901 Stirling Road
Suite 206
Ft. Lauderdale, FL 33312
tel. 954.967.1493
fax 954.967.1496
toll free 800.350.4566
toll free TDD only 866.478.0640

☐ The Times Building
Suite 513  1000 N. Ashley Drive
Tampa, FL 33602
tel. 813.233.2920
fax 813.233.2917
toll free 866.875.1794
toll free TDD only 866.875.1837

PLAINTIFF'S EXHIBIT A

incidents of abuse and neglect, based on probable cause. See 42 U.S.C. § 10805(4)(B) regarding access to all records of any individual (including an individual who has died or whose whereabouts are unknown). In 2000, The PAIMI Act was expanded to include services to persons with mental illnesses who live in community settings, including their own homes. See 42 U.S.C. 10802(4)(B)(ii).

Pursuant to the authority of the PAIMI Unit of the Advocacy Center as described above, we are requesting a copy of all of the records on Ms. Driver for the year 2002. Included in these records should also be all psychiatric notes and all contacts with the Emergency Services Program.

The Advocacy Center also requests a copy of any policies and procedures that describe the operations of emergency services.

Thank you for your assistance in this matter. If you have any questions, please feel free to contact me at (850) 488-9071, ext. 236. We would like to receive this material within two weeks of your receipt of this letter. If there is a problem with this, please let us know as soon as possible.

Sincerely,

*Linda Rollins*

Linda Rollins
PAIMI Advocate

lr

# Exhibit B

# GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH **FILE**

A PROFESSIONAL LAW CORPORATION
1101 GULF BREEZE PARKWAY
SUITE 2
GULF BREEZE, FLORIDA 32561
TELEPHONE (850) 934-3800
TELECOPY (850) 934-3848

www.gjtbs.com

Please reply to the Florida Office

W. DAVID JESTER
Director

djester@gjtbs.com

Licensed in Florida
and Alabama

REGIONAL OFFICES:

ONE SHELL SQUARE
701 POYDRAS STREET, SUITE 4040
NEW ORLEANS, LOUISIANA 70139-4003
(504) 525-6802

3555 TIMMONS LANE, SUITE 1225
HOUSTON, TEXAS 77027
(713) 599-0700

600 JEFFERSON STREET
SUITE 404, BOX 61
LAFAYETTE, LOUISIANA 70501
(337) 266-2388

August 23, 2002

Lisa Rollins, PAIMI Advocate
Advocacy Center for Persons with Disabilities, Inc.
2671 Executive Center Circle West, Suite 100
Tallahassee, FL 32301-5092

> RE: Ruby Driver
> Date of Birth: 09-08-47
> Our File No.: FL0915-192

Dear Ms. Wralins:

This firm represents the interest of Chautauqua Offices of Psychotherapy & Evaluation ("COPE Center"), Post Office Box 607, DeFuniak Springs, Florida 32433. We have been provided a copy of your letter dated July 16, 2002, requesting release of medical records relating to the treatment of Ms. Driver for the year of 2002 and seeking a copy of any policies and procedures that describe the operation of emergency services. I have researched the U.S. Code cited by you in support of your proposition that you are entitled to receive those records and disagree with your contention that the materials should be surrendered to your office. At the time of her death, Ms. Driver was not a resident of a mental health facility nor was she in the process of being placed in a facility such that 42 U.S.C. Section 10801 et seq. would apply. As I am unfamiliar with your agency, I ask that you provide me with further statutory support for your request.

Please feel free to contact me directly upon receipt of this correspondence should you wish to discuss this matter.

With best regards, I am,

Cordially,

W. David Jester

WDJ/tmt

# Exhibit C



# Advocacy Center for Persons With Disabilities, Inc.

## *Florida's Protection and Advocacy Programs*



RECEIVED
SEP - 4 2002
By ___TMT___

September 3, 2002

W. David Jester, Attorney
Galloway, Johnson, Tompkins, Burr & Smith
1101 Gulf Breeze Parkway
Suite 2
Gulf Breeze, FL 32561

RE:    Ruby Driver
       DOB: 09/08/47

Dear Mr. Jester:

We are in receipt of your letter of August 23, 2002, in which you opine that we are not entitled to the requested materials on Ruby Driver, an individual who was seen at the COPE Center shortly before her death.

It appears that we did omit one relevant authorizing authority when we sent you references to our enabling legislation. Public Law 106-310 (October 17, 2000), Sec. 3206 expands our authority to include an individual who lives in a community setting, including their own home. I have enclosed a copy and highlighted the language to which I refer. I apologize for not including this with our earlier correspondence.

Given this clarification, we are again requesting release of Ms. Driver's clinical record for the year 2002 and copies of any polices and procedures that describe the operation of emergency services. If you do not feel this additional clarification is sufficient, please let me know. Thank you.

Sincerely,

*Linda Rollins*

Linda Rollins
PAIMI Advocate

lr

Enclosure

☑ 2671 Executive Center Circle West,
   Suite 100
   Tallahassee, FL 32301-5092
   tel. 850.488.9071
   fax 850.488.8640
   toll free 800.342.0823
   toll free TDD only 800.346.4127

☐ 2901 Stirling Road
   Suite 206
   Ft. Lauderdale, FL 33312
   tel. 954.967.1493
   fax 954.967.1496
   toll free 800.350.4566
   toll free TDD only 866.478.0640

☐ The Times Building
   Suite 513  1000 N. Ashley Drive
   Tampa, FL 33602
   tel. 813.233.2920
   fax 813.233.2917
   toll free 866.875.1794
   toll free TDD only 866.875.1837

*www.advocacycenter.org*

# Exhibit D

A PROFESSIONAL LAW CORPORATION

1101 GULF BREEZE PARKWAY

SUITE 2

GULF BREEZE, FLORIDA 32561

TELEPHONE (850) 934-3800

TELECOPY (850) 934-3848

www.gjtbs.com

**W. DAVID JESTER**
Director

djester@gjtbs.com

Licensed in Florida
and Alabama

ONE SHELL SQUARE
701 POYDRAS STREET, SUITE 4040
NEW ORLEANS, LOUISIANA 70139-4003
(504) 525-6802

3555 TIMMONS LANE, SUITE 1225
HOUSTON, TEXAS 77027
(713) 599-0700

600 JEFFERSON STREET
SUITE 404, BOX 61
LAFAYETTE, LOUISIANA 70501
(337) 266-2388

Please reply to the Florida Office

October 31, 2002

Lisa Rollins, PAIMI Advocate
Advocacy Center for Persons with Disabilities, Inc.
2671 Executive Center Circle West, Suite 100
Tallahassee, FL 32301-5092

RE:     Ruby Driver
        Date of Birth: 09-08-47
        Our File No.:  FL0915-192

Dear Ms. Rollins:

I am receipt of your correspondence date September 23, 2002, in which you offer what you believe to be additional authority supporting your position that you are entitled to the treatment records of Ruby Driver and COPE's policies and procedures related to treatment of patients at their facility. While I agree with your position that the amendment of October 17, 2000 somewhat expends your organization's ability to investigation allegations of abuse, that amendment has been read out of context. Pursuant to 42 U.S.C. Section 10805, your facility may have the right to pursue administrative, legal, and other remedies on behalf of an individual who:

1)      has mental illness; and

2)      is resident of the state, but only with respect to matters which occur within **90-days** after the date of discharge of such individual from a facility providing care and treatment.

Under the facts of this case, Ms. Driver was living in a community setting, but not within 90-days discharge from a treating facility. Based upon our understanding of the Code, there is no support for your claims to entitlement to the records, policies and/or procedures of COPE. It is not my intention to be uncooperative in this matter; however, I have an absolute obligation to protect my client's interests and the privacy interests Ms. Driver has in the release of her mental health records. Unless you can find further definitive authority that supports your contention that you are entitled to the release of the records, I will not forward those materials to you.

With best regards, I am,

Cordially,

*W. David Jester*/tmt

W. David Jester

WDJ/tmt

# Exhibit E



2671 Executive Center
Circle West • Suite 100
Tallahassee, FL 32301-5092
tel. 850.488.9071    fax 850.488-8640
toll free voice 800.342.0823
toll free tdd only 800.346.4127

2901 Stirling Road
Suite 206
Ft. Lauderdale, FL 33312
tel. 954.967.1493
fax 954.967.1496
toll free 800.350.4566

December 17, 2002



**CONFIDENTIAL COMMUNICATION**

W. David Jester, Esq.
Galloway, Johnson, Tompkins, Burr & Smith
1101 Gulf Breeze Parkway, Ste 2
Gulf Breeze, FL  32561

Re:     Ruby Driver
        Date of Birth:  09/08/47
        **Your File No:** FL0915-192

Dear Mr. Jester:

I am writing in response to your letter of October 31, 2002 to Linda Rollins, an advocate in the PAIMI Program of this agency, stating that you will not provide the treatment records of Ruby Driver or COPE's policies and procedures related to treatment of patients at that facility.

You appear to base your denial of access to the requested records on the language of 42 U.S.C. § 10805(a)(1)(C), which provides in relevant part that this agency has authority to pursue administrative, legal, and other remedies on behalf of an individual with a mental illness, "but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment."

I respectfully disagree with your opinion that this agency is not entitled to the requested records for the following reasons:

First, this agency has probable cause to believe that Ruby Driver received care or treatment for a mental illness at the COPE facility in Defuniak Springs as recently as the day prior to her death, in which case she received care or treatment well within the 90-day period.  In any event, a protection and advocacy (P&A) system established under 42 U.S.C. § 10803 may serve individuals even though the matters have been brought to the system's attention long after the end of that 90-day period.  The Act's legislative history clarifies that this statutory coverage restriction should not be viewed as a "limitation on the time at which remedies may be sought or as limitation on the time during which such actions may extend . . . .  Rather, the 90-day limit is explicitly on the time during which causes of advocacy may arise."  H. Rep. 401, 99th Cong., 1st Sess. 9 (1985).  The

w w w . a d v o c a c y c e n t e r . o r g
A d v o c a c y   C e n t e r   f o r   P e r s o n s   W i t h   D i s a b i l i t i e s ,   I n c .
F l o r i d a ' s   P r o t e c t i o n   a n d   A d v o c a c y   P r o g r a m s

interpretative guidance in the preamble discussion for the PAIMI regulations agrees (62 Fed. Reg. 53554): "neither the Act nor the final regulations place a time limitation on the authority of the P&A system to address complaints of abuse or neglect that occurred during the 90-day post-discharge period." Thus, P&As are entitled to full access to facilities and records (consistent with other requirements of the Act) as is necessary to investigate potential abuse or neglect which is believed to have occurred within 90 days following the individual's discharge.

Second, the 90-day discharge provision no longer has any practical effect, given the amendment in 2000 to the PAIMI Act authorizing services to persons with mental illness living in the community. The amendment is effective in all fiscal years in which the appropriation for the Act equals or exceeds $30 million (which has been the case the last two years).

The Advocacy Center has broad authority to access records related to alleged abuse or neglect of persons with disabilities. *See* 42 U.S.C. §§ 10805(a)(4), 10806. The Advocacy Center has authority to access the records of an individual with a disability without a release when:

1. The individual, due to his/her mental or physical condition, is unable to authorize the protection and advocacy agency to have access to his/her records (e.g., the individual is deceased);

2. The individual does not have a legal guardian, conservator, or other legal representative, or the individual's representative is a public entity, including the state; and

3. The protection and advocacy agency has received a complaint that the individual has been subject to abuse or neglect, or has determined that probable cause exists to believe that the individual has been subject to abuse or neglect.[1]

42 U.S.C. § 10805(a)(4)(B).

The records must be provided "promptly" after the Advocacy Center makes a written request for the records. 42 C.F.R. §51.41(a). If the Advocacy Center is denied access to the requested records, we must be provided a prompt written statement of reasons. 42 CFR § 51.43.

---

[1] The Advocacy Center is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect. *Maryland Disability Law Center, Inc. v. Mt. Washington Pediatric Hospital, Inc.* 664 A.2d 16 (Md. Ct. Spec. App. 1995); *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689 (D. AZ. 2000).

w w w . a d v o c a c y c e n t e r . o r g
A d v o c a c y   C e n t e r   f o r   P e r s o n s   W i t h   D i s a b i l i t i e s ,   I n c .
F l o r i d a ' s   P r o t e c t i o n   a n d   A d v o c a c y   P r o g r a m s

Your expressed "obligation to protect ... the privacy interests Ms. Driver has in the release of her mental health records" is commendable, however courts recognize that confidentiality concerns are not a basis for withholding records because the P&A has a right of access to such records by virtue of the PAIMI Act and the P&A is required to keep such records confidential to the same extent as the provider of the service. *See* 42 U.S.C. § 100806(a); *Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1174 (ND Iowa 2001).

I will anticipate your response within ten (10) days of receipt of this request. If you have any questions about this request, please contact me at the address above.

Sincerely,

Jeff Nelson
Attorney
Advocacy Center for Persons With Disabilities, Inc.
954/967-1493 x-202

JSN:

w w w . a d v o c a c y c e n t e r . o r g
A d v o c a c y   C e n t e r   f o r   P e r s o n s   W i t h   D i s a b i l i t i e s ,   I n c .
F l o r i d a ' s   P r o t e c t i o n   a n d   A d v o c a c y   P r o g r a m s

# Exhibit F

As we understand the statute, your agency must act within the scope of the statute that created it. Our concern is that your agency is not authorized by statute to investigate the suicides of all persons seeking out-patient psychiatric treatment. <u>Out-patient</u> is the operative word here. There are numerous people who seek out-patient, psychiatric treatment in the state of Florida. Many of these psychiatric out-patients have never been institutionalized. All of these out-patients would probably have their prescriptions reviewed by their psychiatrist on a 90-day basis. Your interpretation of the enabling statute for your agency would open the door for your agency to investigate every possible suicide in Florida if it occurred within 90 days of an out-patient seeing a psychiatrist for a prescription update. This interpretation goes against the legislative history of PAIMI (a.k.a. PAMII).

Based on the legislative history of your agency's enabling statute, we do not see the recent amendment as endorsing this result. The history of the statute was to curb state psychiatric hospitals from warehousing patients with no treatment, insufficient food, clothing and hygiene. In essence, the investigation and termination of inhumane treatment of custodial patients was the aim of the legislation because they were viewed as "the most vulnerable individuals [institutionalized persons]." ***Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center***, 97 F.3d 492 (11th Cir. 1996). While federal legislation has been enacted over the years to include custodial and quasi-custodial mental health services for mentally and physically disturbed or abused children and adults, the cases you cite refer to investigations of custodial facilities, not psychiatrists who treat patients in the community who receive no other mental health services.

Since there has been a trend toward integrating the mentally ill into society and giving them as much freedom as possible, programs and services which are only partially custodial have arisen. It is to these quasi-custodial settings that the 2000 amendment refers. Ms. Driver was receiving no such services at her death. ***West Virginia Advocates, Inc. v. Appalachian Community Health Center, Inc.***, 191 W. Va. 671, 447 S.E.2d 606 (W.Va. 1994).

In our prior letters, we requested specific information concerning the basis on which the request was made and the authority for the documents to be released to your organization. As we have consistently stated in each letter, Ms. Ruby Driver had not been discharged from a mental health facility within ninety days of her death. She was receiving no mental health services other than prescriptions from a psychiatrist which were occasionally reviewed and adjusted. Thus, even though 42 U.S.C. § 10810 et seq. does discuss your group's right to investigate abuse and neglect of patients who are in the community, our reading of this statute requires that the investigation be based on actions or omissions that occurred in custodial or quasi-custodial care or within ninety days of the discharge of the patient from a custodial or quasi-custodial treatment program. Our reading of 42 U.S.C. §10805, which distinctly uses the word "discharge," only gives your organization the right to investigate:
I.) upon probable cause, and
II.) if the person:
    A) has a mental illness, and
    B) was an in-patient resident of a facility not more than ninety days from the time of the abuse or neglect.

We dispute your offices' request because the basis for probable cause has not been certified under oath or even stated in the requesting letters and Ms. Driver had not been an in-patient in any facility for several years. There does not appear to have been any particular "complaint" of abuse or neglect as to Ms. Driver. Thus, 62 Fed. Reg. 53554 does not appear to apply to this situation.

Although your letters assume probable cause and your statement over the phone was that the mere existence of an apparent suicide provided probable cause, I see no statutory reference under 42 U.S.C. § 10805 that makes the possible suicide of a mentally ill person, living with family, the equivalent of an automatic probable cause for an investigation by your agency. In fact, the case law regarding probable cause requires that a factual basis be stated and that:

> "the director of the system has certified in writing to the chief administrative office of the health care provider that there is probable cause to believe that the recipient has been subject to abuse or neglect ... [and the certificate shall be ] by affidavit[,] *setting out its basis for probable cause.*"

***Maryland Disability Law Center, Inc. v. Mt. Washington Pediatric Hospital, Inc.*** 106 Md. App. 55, 664 A.2d 16 (Ct. of Spec. Appeals of Md. 1994) (custodial patient involved). In ***Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 894 F. Supp. 424 (M.D. Ala. 1995)*** (custodial patient involved) the court also required a factual basis in support of probable cause. The death of the patient alone was not sufficient. See also, ***Disabilities Rights Center, Inc. v. Commissioner, New Hampshire Department of Corrections***, 143 N.H. 674, 732 A.2d 1021 (Sup. Ct. N.H. 1999) (JCAHO audit); ***Center for Legal Advocacy v. Earnest***, 188 F. Supp. 2d 1251 (D.C. Colo. 2002) (custodial patient; restraints and death for probable cause); ***Georgia Advocacy Office v. Borison***, 238 Ga. App. 780, 520 S.E.2d 701 (Ga. App. 1999) (indictment of doctors for injury and their guilty plea for probable cause, but only as to in-patients).

Thus, we will need the specific facts and legal authority on which you base your assertion that an apparent suicide by Ms. Ruby Driver provides probable cause for your investigation and request for confidential records. Our client's "obligation to protect ... the privacy interests Ms. Driver has in ... her mental health records" is not just "commendable" (we assumed you meant this sarcastically), it is required of our client by state and federal statute. You have totally failed to address these statutory privacy issues, in your responses, other than to flatly state that PAIMI preempts all state law. This opinion is not supported by case law.

If we are satisfied from the supplemental information that your organization has statutory authority to investigate our client's facility in relation to their outpatient treatment of Ruby Driver, we would further need confirmation that your statutory authority takes precedence over state and federal privacy requirements imposed on our client. Specifically, you stated in our phone conversation that Florida requirements would be subjected to the federal authority in your organization to investigate mental health abuse and neglect. Please provide the legal authority on which you rely for this proposition. ***Disabilities Rights Center, Inc. v. Commissioner, New Hampshire Department of Corrections***, 143 N.H. 674, 732 A.2d 1021 (Sup. Ct. N.H. 1999)

found that PAMII did not preempt state law and that the preemption language in any federal statute should be read in context and narrowly applied.

The State of Florida requires, pursuant to Florida Statutes, Section 394.4615, that the patient or, if deceased, their "next of kin" or personal representative may provide informed consent for the release of clinical records. This requirement has not been judicially determined to be preempted by PAIMI. See, *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1994). The Florida statute is not in conflict with PAIMI's objectives since "Congress ... specifically found , when implementing PAMII that 'family members of individuals with mental illness play a crucial role in being advocates for the rights of individuals with mental illness who are minors.'" Although Ms. Driver was not a minor, the fact that she lived with family and the trend toward putting patients outside the custody of private or public custodial settings weighs in favor of having the involved family members give their consent for records to be released. *Advocacy, Incorporated v. The Brown Schools Inc.*, 2001 WL 1910563 (USDC WD Texas). Additionally, PAIMI has its own requirement that the patient's guardian be contacted. Thus, there is no clear preemption of Florida's privacy requirement that I can find. Please provide what you have that proves PAIMI preempts this particular Florida statute.

You were unsure of any Federal privacy requirements, but the same legal authority establishing a preemption of HIPPA and PHSA privacy requirements for records will be necessary. Please provide the specific facts and legal authority on which you rely in your position that your statutory authority, under 42 U.S.C. § 10805, takes precedence over the privacy restrictions and requirements enacted under these two other Federal Statutes.

It is interesting to note that there were none of the cases you cite in your letter are about out-patient investigations of non-custodial abuse or neglect under PAIMI. This lack of case law to support your position, plus our reading of the information you and the local advocacy center previously provided merely reinforce our understanding of the requirements of the act and that they have not been fulfilled. If your reading is correct and the information you quoted as to 62 Fed. Reg. 53554 is correct, it merely states that the abuse or neglect occurred within ninety days following the individual's "discharge," it does not appear to state that the discharge is the equivalent of an outpatient person's appointment with a psychiatrist. These appear to be two totally different events under the act. Since the act's original purpose had nothing to do with outpatient treatment, only express legislative amendments to include outpatient treatment would appear to provide your organization with the authority it seeks in requesting the records for Ms. Ruby Driver.

We have corresponded with your office in good faith to obtain substantiation for your request and are still willing to review what you will provide in response to this letter in determining if the records can be released without violating other laws. We have promptly responded to the Center's request for information with our specific statement of reasons and concerns in complying with the request.

# GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
A PROFESSIONAL LAW CORPORATION

This letter will confirm that:

1. Your office has made no contact with the representative of Ms. Ruby Driver or any member of her family for action on her behalf;
2. Your organization did not have an attorney client relationship with Ms. Driver;
3. Your organization has not provided authorization from a personal representative of Ms. Driver's estate or her next of kin; and
4. Your office has not provided a certified and notarized request citing a basis for probable cause;
5. Your office provided no subpoena or other court order requiring the release of these records.

Our review of the cases you previously cited indicates that the subject of the investigation was an inpatient facility and often the opinion concerns access to a facility not receipt of records. The consensus of the cases you cited also indicates that the patient was incarcerated when the alleged harm occurred. Please provide case law which fits the facts concerning Ms. Driver.

In conclusion, the part of PAIMI that you quote in your letter lists three elements. Only element one has been met. The second element of a guardian or other legal representative is not defined in PAIMI and must be defined by state law. In Florida the next of kin are included as representatives of a deceased. As to the third element, no basis for probable cause has been shown. Your list fails to include the connecting word "and" which falls at the end of number iii in the statute. The next item in the statute after iii involves when the patient has a representative. Thus, when there is a representative of the deceased, your agency must contact them before taking action. Nothing in the correspondence we have received indicates that the family of Ms. Driver has been contacted and that they refused to act.

Very truly yours,

W. David Jester
Melissa A. Posey

WDJ/MAP/jlc

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ADVOCACY CENTER FOR PERSONS
WITH DISABILITIES, INC.,

     Plaintiff,

                    Case No.:

vs.

CHAUTAQUA OFFICES OF
PSYCHOTHERAPY AND EVALUATION, INC.

     Defendant.

---

## AFFIDAVIT OF DR. LOURDES F. QUIRAY, M.D.

1.    My name is Dr. Lourdes F. Quiray and I am a staff physician at the offices of Chautauqua Psychotherapy and Evaluation, Inc. ("Cope Center").

2.    I am over the age of majority and am competent to testify to the truth of the matters contained herein.

3.    At all times material to the Declaratory Action, I have been a full time staff physician employed by the Cope Center.

4.    At all times material to the Declaratory Action, I have been the staff physician who has provided treatment to Ms. Ruby Driver.

5.    Based upon a review of Ms. Ruby Driver's medical records at all times material to the Declaratory Action, Ruby Driver, was not admitted to nor had she been discharged from the Cope Center facility within ninety, (90) days prior to her death.

**FURTHER AFFIANT SAYETH NAUGHT.**

_Lourdes F. Quiray_

DR. LOURDES F. QUIRAY, Staff Physician
Chautauqua Offices of Psychotherapy &
Evaluation, Inc.


STATE OF FLORIDA
COUNTY OF _Okaloosa_

The foregoing Affidavit was sworn and subscribed before me this ___8___ of
August, 2003, by Dr. Lourdes F. Quiray, who has produced _FL Driv Lic # Q600-526-53-684-0_
as identification or who is personally known to me, and took an oath that the statements
therein are true to the best of her knowledge and belief.


_Bethany Elaine Hunt_
Notary Public

BETHANY ELAINE HUNT
MY COMMISSION # DD 149199
EXPIRES: September 11, 2006
1-800-3-NOTARY  FL Notary Service & Bonding, Inc.

_Bethany Elaine Hunt_
Printed Name
My Commission Expires: _9/11/06_