IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ADVOCACY CENTER FOR PERSONS
WITH DISABILITIES, INC.,

    Plaintiff,

vs.                                                           CASE NO. 4:03-cv-181-RH/WCS

CHAUTAQUA OFFICES OF
PSYCHOTHERAPY AND EVALUATION, INC.

    Defendant.
_____/

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS, OR
ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

This action was brought to enforce the Plaintiff's federal authority to investigate incidents of abuse and neglect. The Defendant alleges that the Plaintiff has failed to set forth a cognizable claim, and that the case should be dismissed with prejudice for failure to state a cause of action or, in the alternative, dismissal by summary judgment.

The Defendant states that the Plaintiff (1) "has failed to plead a factual basis demonstrating it has standing to bring a claim mandating the disclosure of the requested records and material;" (2) the Plaintiff has not "plead either the existence of a complaint of abuse or neglect or establish probable cause to believe that such abuse or neglect has occurred;" and (3) that it is entitled to the records and materials in question under its 42

- 6 -

U.S.C § 10801 *et seq.* (PAMII) authority. See generally Defendant's Motion to Dismiss. Based upon the foregoing, the Defendant claims that the Plaintiff "cannot, under any circumstances, establish facts that would entitle it to the disclosure of these privileged mental health records." Defendant's Motion to Dismiss at 11. The Plaintiff respectfully submits that the Defendant's arguments are without merit.

The Plaintiff has alleged that it has standing to investigate incidents of abuse and neglect to individuals with mental illness. See paragraphs 2 & 10 of the Complaint. See also Advocacy Center For Persons With Disabilities, Inc. v. Woodlands Estates Ass'n, Inc., 192 F.Supp.2d 1344, 1346 (M.D. Fla. 2002) (holding that the Advocacy Center has standing to sue on its own behalf). The authority to investigate incidents of abuse and neglect applies, *inter alia*, to private facilities. Wisconsin Coalition for Advocacy, Inc. v. Czaplewski, 131 F. Supp.2d 1039 (E.D. Wis. 2001).

The Plaintiff has plead that it had received information regarding the decedent's receipt of services from the Defendant the evening prior to her death. Based on this information, the Plaintiff had determined there was probable cause to believe that the decedent had been subject to an incident of abuse and neglect to warrant an investigation. See paragraphs 12-14 of the Complaint.

A determination of probable cause to support such an investigation will not be re-evaluated by the service provider merely because it disagrees that probable cause exists. Center For Legal Advocacy v. Earnest, 188 F. Supp.2d 1251 (D. Colo. 2002), reversed on other grounds 320 F.3d 1107. Moreover, the Plaintiff is the final arbiter of probable cause for the purpose of triggering its authority to access all records of an individual with

2

mental illness who may have been subject to abuse or neglect. <u>Arizona Center for Disability Law v. Allen</u>, 197 F.R.D. 689 (D. Ariz. 1001).

Furthermore, the Plaintiff has plead that all conditions precedent to the bringing of this action has occurred or has been performed. Paragraph 4 of the Complaint. The Affidavit of Tammy Anderson, attached hereto and incorporated herein as Plaintiff's Exhibit A, is further support of the Advocacy Center's compliance with its statutory obligations prior to requesting the records which are the subject of this dispute.

The Defendant bases its claim that the Plaintiff is not entitled to the decedent's records upon the statutory language that entitlement to those records are "only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment." 42 U.S.C. § 10805(a)(1)(C). The Defendant claims that because the decedent was not an in-patient at the Defendant's facility within ninety days of her death, the Advocacy Center has no authority to review her records even if the Center has made a finding of probable cause to believe that an incident of abuse and neglect had occurred during treatment. That argument belies the statutory language authorizing a Protection and Advocacy (P&A) system to investigate incidents of alleged abuse and neglect if brought to its attention or after a finding of probable cause.

> The purposes of this chapter are - -
> To assist States to establish and operate a protection and advocacy system for individuals with mental illness which will
>
>> Investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incident's occurred. 42 U.S.C. § 10801(b)

3

Prior to the amendments to 42 U.S.C. § 10802(4)(B) in 2000, the Advocacy Center was only authorized to investigate an incident of abuse and neglect for persons with a "significant mental illness or emotional impairment," as determined by a mental health professional, who either : (1) resided in a "facility" rendering care or treatment; (2) were in the process of admission to such a facility; (3) recently have been discharged from such facility, or (4) were involuntarily confined in a municipal detention facility for reasons other than serving a sentence resulting from conviction for a criminal offense.

Public Law 106-30, October 17, 2000, expanded the P&A's coverage of the mentally ill to those who "live in a community setting, including their own home" without limiting a P&A's ability to investigate incidents of abuse and neglect. 42 U.S.C. § 10802(4)(B)(ii). The 90 day requirement should not be held to apply to this class of individuals with mental illness because they may have never received in-patient services. Should the 90 day rule apply, an out-patient care giver would be free from a P&A's inquiry into allegations of abuse and neglect.

Senate Report 196, 106th Cong. 1st Session (1999), addressed the amendment at page 25. The Report stated "this section also expands the authority of the [P&A] systems to include protecting and advocating on behalf of the rights of individuals with a serious mental illness or emotional impairment who are living in communities and who may be subject to abuse or neglect or discrimination in housing, *health care*, (emphasis supplied) employment or benefits." And continuing on page 26, the Report provides that "P&A systems . . . shall have no less authority to access records to investigate abuse and neglect than is provided to the systems under the Developmental Disabilities Assistance and Bill of Rights Act." There is no 90 day requirement under that Act. See 42 U.S.C.

§ 15043.

However, even if this Court should find that the 90 day rule applies, the Plaintiff would be entitled to access the records and materials in question because it was approached by the decedent's Personal Representative for its help in obtaining those records. See Plaintiff's Exhibit A. 42 U.S.C.§ 10805(4) provides in pertinent part that "in accordance with section 10806 of this title, [ a P&A shall] have access to all records of (A) any individual . . . [where the] legal representative of such individual, has authorized the system to have such access."

Fed. R. Civ. P. Rule 8(a) states: "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain: (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . .(2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." The purpose of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 78 S.Ct. 99, 103, 2 Le.Ed.2d 80 (1957).

In this instance, the Plaintiff has (1) set forth its statutory authority; (2) has stated a short and plain statement showing entitlement to relief, and (3) has demanded relief in accordance with its statutory authority.

## CONCLUSION

WHEREFORE, the Plaintiff, ADVOCACY CENTER FOR PERSONS WITH DISABILITIES, INC., requests an Order be entered denying the Defendant's Motion To

Dismiss, Or Alternatively Motion for Summary Judgment, and Order the Defendant to answer the Complaint for Declaratory and Injunctive Relief.

Respectfully submitted,

/s/ Gordon B. Scott
GORDON B. SCOTT
Fla. Bar No. 112860

Hubert Grissom, Esq.
Fla. Bar. No.0166758

Advocacy Center for Persons
 With Disabilities, Inc.
2671 Executive Center Circle, W.
Tallahassee, FL 32301-5092
(850) 4889071
(850) 488-8640 fax

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by U.S. Mail on W. David Jester, Esq., Galloway, Johnson, Tompkins, Burr & Smith, 1101 Gulf Breeze Parkway, Suite 2, Gulf Breeze, FL 32561 on this 25th day of August, 2003.

/s/ Gordon B. Scott
Gordon B. Scott

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ADVOCACY CENTER FOR PERSONS
WITH DISABILITIES, INC.,

    Plaintiff,

vs.                                        CASE NO. 4:03-cv-181-RH/WCS

CHAUTAUQUA OFFICES OF
PSYCHOTHERAPY AND EVALUATION, INC.

    Defendant.
_____/

AFFIDAVIT OF TAMMY ANDERSON
IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS, OR ALTERNATIVELY,
MOTION FOR SUMMARY JUDGMENT

1. My name is Tammy Anderson, and I am the Personal Representative of the Estate of Ruby Driver who was my mother.

2. I make this Affidavit upon personal knowledge, and I am competent to testify to the truth of the matters contained herein.

3. During her life, my mother, Ruby Driver, was treated for a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State of Florida.

4. My mother resided with me for five years prior to her death and received out-patient treatment for her mental illness at the Defendant facility.

EXHIBIT A

5. On June 12, 2003, I received a call from an officer with the DeFuniak Springs Police Department regarding a call my mother had placed to the Helpline on the previous day. I was advised that my mother claimed to be suicidal.

6. Upon arriving at home, I noticed my mother was distressed. She claimed that her medication was ineffective and did not want to live anymore.

7. I immediately drove my mother to the Defendant's facility where she was examined in my presence by Dr. Lourdes F. Quiray. Dr Quiray was advised that my mother was suicidal.

8. Dr. Quiray refused to change my mother's medication sending her home. The following day my mother committed suicide.

9. I contacted the Advocacy Center on July 3, 2002 to request their help in obtaining my mother's records from the Defendant facility for the purpose of looking into the treatment she had received the day prior to her death.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
TAMMY ANDERSON

STATE OF FLORIDA
COUNTY OF WALTON

The foregoing Affidavit was sworn and subscribed before me this 21ST day of August, 2003, by Tammy Anderson, ~~who has produced~~ ~~as identification or~~ who is personally known to me, and took an oath that the statements therein are true to the best of her knowledge and belief.

*Missy Drake*
Notary Public

MISSY DRAKE
MY COMMISSION # CC 963176
EXPIRES August 24, 2004
Bonded Thru Notary Public Underwriters

Missy Drake
Printed Name

My Commision Expires: 8-24-04

3